## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **LATAHONA R. LEDFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-16-** 1126-D |
| | ) | |
| 1. **IHS HOLDING, INC., d/b/a** | ) | |
| **HILLCREST NURSING CENTER,** | ) | |
| and | ) | |
| 2. **HLTC STAFFING, LLC, d/b/a** | ) | |
| **HILLCREST NURSING CENTER,** | ) | **Jury Trial Demanded** |
| | ) | **Attorney Lien Claimed** |
| **Defendants.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Latahona R. Ledford, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff, Latahona R. Ledford ("Plaintiff"), is an adult female, who at all times relevant hereto was a resident of Grady County, Oklahoma.

2.      Defendants are:

a.      IHS Holding, Inc. d/b/a Hillcrest Nursing Center, a corporation doing business in and around Cleveland County, Oklahoma; and

b.      HLTC Staffing, LLC d/b/a Hillcrest Nursing Center, a limited liability company doing business in and around Cleveland County, Oklahoma.

1

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendants based on claims of (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and (b) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities (i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn); and (c) violation of Oklahoma's Protective Services for Vulnerable Adults Act.

4.     This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claim, and jurisdiction over them is vested in this Court under 28 U.S.C. §1367(a).

5.     All of the claims complained of herein occurred in or around Cleveland County, Oklahoma. Defendants are doing business in such county and may be served in such county. Cleveland County is located within the Western District of the United States District Court of Oklahoma, wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.     Plaintiff has exhausted her administrative remedies. She filed an EEOC Charge of Discrimination on or about January 13, 2016 and a second Charge on or about March 10, 2016. The EEOC issued a Notice of Right to Sue on Plaintiff's initial Charge,

dated on or about August 2, 2016, which Plaintiff received thereafter by mail.  The EEOC issued a Notice of Right to Sue on Plaintiff's second Charge, dated on or about September 15, 2016, which Plaintiff received thereafter by mail.  She has timely filed her Complaint within ninety (90) days from her receipt of the same.

## STATEMENT OF FACTS

7.      Plaintiff was born in 1962 (making her over age 40 at all relevant times hereto).

8.      Plaintiff began her employment with the Defendants on or about August 24, 2015 as the Director of Nursing.

9.      Plaintiff was hired by then-Administrator Shirley Breshears.  However, when Plaintiff started work, Breshears was no longer employed with Defendants.  As such, Plaintiff reported to Corporate Administrator Marilyn Yeakley.

10.     Throughout her employment, Plaintiff's job performance was at least satisfactory, if not excellent.

11.     Despite her good work performance, in or around late-October/early-November 2015, Yeakley questioned Plaintiff about whether Plaintiff could "keep up."

12.     Yeakley then fired Plaintiff about two weeks later, on or about November 11, 2015, while Plaintiff was on medical leave due to a respiratory infection.

13.     Yeakley did not offer any explanation for Plaintiff's termination.  Rather, Yeakley simply told Plaintiff "we no longer need your services."

14.     Plaintiff was replaced with a significantly younger individual.

15.     Shortly before her termination, Plaintiff had reported several patient-care issues to the Oklahoma State Department of Health ("State"), which the State noted in its investigative report, wherein it found several deficiencies.

16.     More particularly, from nearly the outset of her employment, Plaintiff noticed Defendants frequently failed to have sufficient staff to meet the Oklahoma State minimum staffing requirements.

17.     Concerned for the health, safety and welfare of the residents, Plaintiff implored Yeakley to allow her to take steps necessary to ensure adequate staffing was maintained, including but not limited to calling a temporary employment agency.  However, Yeakley prohibited Plaintiff's requests, telling Plaintiff to just "deal with it."

18.     Yeakley further demanded Plaintiff admit individuals who suffered from highly contagious conditions.  However, the facility did not have proper accommodations (including but not limited to private rooms) for said individuals. This posed a risk of harm to others in contracting the contagious conditions.

19.     By way of example, pursuant to the admission process in place during Plaintiff's employment, Plaintiff received documentation from the Admissions Coordinator, which provided information about the individual seeking admission, including *inter alia* the conditions from which the individual suffered.  Upon receiving the same, Plaintiff reviewed the information; assessed whether the facility could meet the individual's needs; and returned the documentation, stating whether the individual should or should not be admitted.

20.     Consistent with this process, in or around September 2015, Plaintiff received documentation from the Admissions Coordinator for an individual seeking admission who suffered from respiratory Methicillin-resistant Staphylococcus aureus (MRSA), a highly contagious bacterial infection which can be spread through airborne transmission.

21.     Proper care and treatment for the individual would have required reverse isolation (i.e., protecting the individual from the outside environment) in a negative-pressure room with separate ventilation to allow air to flow into the isolation room but not to escape so as to prevent contaminated air from leaving the room.

22.     Upon receiving such documentation, Plaintiff contacted the Case Manager at the hospital where the individual was admitted and advised that Defendants' facility did not have an isolated room available.  As such, the Case Manager said the individual could not be admitted to Defendants' facility.  And, Plaintiff returned the documentation to the Admissions Coordinator, stating that the individual could not be admitted until the respiratory MRSA condition was resolved.

23.     However, Yeakley chastised Plaintiff for not admitting the individual, telling Plaintiff that she should have convinced the hospital to allow the individual to be admitted to Defendants' facility.

24.     Around this same time period, Yeakley also forced Plaintiff to admit an individual suffering from Clostridium difficile (C. Diff.), another highly contagious condition.  Such condition typically required isolation, as well as other contact precautions,

including but not limited to the use of personal protective equipment when providing treatment for the individual.

25.     After reviewing the documentation from the Admissions Coordinator for said individual, Plaintiff returned the documentation, stating the individual should not be admitted as no private rooms (other than private-pay rooms) were available, and the individual would not have been private-pay, as the individual was a Medicare/Medicaid recipient.

26.     However, shortly after Plaintiff returned the documentation, Yeakley called Plaintiff and angrily demanded the individual be admitted.

27.     Plaintiff explained that because the individual had a contagious condition, the individual would need to be isolated.  Plaintiff suggested a private-pay, private room assignment until the individual was no longer contagious since no other private rooms were available.  However, Yeakley rejected Plaintiff's suggestion.

28.     As such, Plaintiff was forced to admit the resident and assign them to a room shared with another resident who then contracted C. Diff. from the individual admitted.

29.     Yeakley also forced Plaintiff to admit a registered sex offender, despite the fact that Defendants' facility is within 2,000 feet of a daycare.  Plaintiff explained to Yeakley that she understood a registered sex offender was prohibited from residing within 2,000 feet of a school or child care facility.  However, Yeakley required Plaintiff to admit the individual regardless of such State law.

30.     Concerned for the health and safety of the residents, in or around late-September/early-October 2015, Plaintiff reported her concerns to the State.  Plaintiff reported that she was prevented from having adequate staff and was forced to admit individuals with contagious conditions without appropriate accommodations, as well as being forced to admit a registered sex offender thereby placing the health and safety of others at risk.

31.     Plaintiff further reported to the State that Defendants failed to have an effective system for ordering medications, in that, Defendants required medications be ordered from a corporate affiliate pharmacy more than fifty (50) miles away.  And, Defendants did not have an emergency pharmacy in the event emergency medications or supplies were needed.

32.     On or about November 3, 2016, the State issued an investigative report to Defendants, finding Defendants had a pattern of deficiencies that constituted actual harm.

33.     The report outlined the information reviewed in reaching its determination, including *inter alia* information reported by Plaintiff about the under-staffing and other resident-care issues.

34.     Plaintiff was then fired just one (1) week later, on or about November 11, 2015.

35.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADEA

For her first cause of action against, Plaintiff incorporates all prior allegations and further alleges and states as follows:

36.     Plaintiff is entitled to relief under federal law for age discrimination because, at all relevant times hereto, Plaintiff was over the age of forty (40); she was qualified for her job; she was terminated and her position was not eliminated.

37.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendants' willful conduct in violating the ADEA.

## COUNT II - *Burk* Tort

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

38.     The acts above-described constitute a violation of Oklahoma's public policy which prohibits wrongful termination for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

39.     More particularly, Plaintiff was wrongfully discharged from her employment in retaliation for having reported patient care and safety concerns to the State in violation of Oklahoma's Nursing Home Care Act.

40. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

41. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III – Violation of Oklahoma's Protective Services for Vulnerable Adults Act

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42. The acts above-described constitute a violation of the Oklahoma Protective Services for Vulnerable Adults Act (Okla. Stat. tit. 43A § 10-104), which prohibits employers from terminating employees for the reason that the employee "cooperated with an investigation pursuant to the Protective Services for Vulnerable Adults Act" (i.e., cooperating in an investigation that a vulnerable adult is suffering from abuse, neglect or exploitation).

43. Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendants and assess compensatory damages including but not limited to back pay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

**RESPECTFULLY SUBMITTED THIS <u>27th</u> DAY OF SEPTEMBER, 2016.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA # 18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED

10